## In re R. G. WUNDERLY CO.

(District Court, E. D. Pennsylvania. December 21, 1911.)

No. 3,849.

CORPORATIONS (§ 440*)—CHATTEL MORTGAGES—AUTHORITY TO GIVE.

Act Pa. April 22, 1905 (P. L. 280), authorizing a corporation to mortgage its real or personal property, rights, privileges and franchises, etc., does not authorize a manufacturing corporation to mortgage raw materials and finished product to be bought and made in the future.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1775–1777; Dec. Dig. § 440.*]

In the matter of the R. G. Wunderly Company, bankrupt. On review of an order of the referee. Affirmed.

Calvin F. Smith, for petitioner.
Kirkpatrick & Maxwell, for trustee.

J. B. McPHERSON, District Judge. The question now presented is of first impression in this state, and requires the court to determine whether the act of 1905 (P. L. 280) has empowered a manufacturing corporation in Pennsylvania to mortgage raw materials and finished product to be bought and made in the future. The bankrupt duly authorized and executed two mortgages in December, 1908, by which it conveyed to a trustee for the bondholders:

"* * * All its property, real, personal, and mixed, including all machinery, fixtures, pulleys, belting, tools, raw material, and all other property of the company, whether on the premises described or off the said premises, incident to the business of the said company.

"Also all the property of the company, real, personal and mixed, in possession or expectancy, now owned or hereafter to be acquired, together with all and singular the tenements, hereditaments, rights, franchises, privileges, and easements of the said R. G. Wunderly Company, to secure," etc.

In September, 1910, the company was adjudicated bankrupt, and in the following January all its property was sold discharged of liens for $24,000. Of this sum $16,000 was the value of the real estate, a planing mill, and fixtures, and it is agreed that this must go to the mortgagees. The dispute is over the rest of the fund, which was produced by the sale of raw material, of partly finished product, and of finished product, the two claimants being the general creditors and the mortgage bondholders, the latter asserting priority by virtue of the mortgages.

There is no denial of the following facts:

"(22) There was not at the time of the execution and delivery of the mortgages to the trustee any actual possession taken by or delivery to the trustee of the lumber and other personal property sold under paragraphs 'second' and 'third' for seventy-nine hundred dollars ($7,900.00), nor has there been any such possession taken by or delivery to the trustee of same or such as has been sold and bought afterwards.

"(23) No records were kept by or for the trustee of the mortgages of the lumber and other personal property purchased and worked up into finished product and sold from time to time and the lumber and other personal prop-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

erty, originally upon the premises and owned by the R. G. Wunderly Company at the time of the execution of the mortgages and estimated to be of the value of approximately $25,000, was sold from time to time in the ordinary course of business, without consultation with the trustee, nor was his consent to the sale of same or any part thereof first had and obtained.

"(24) The lumber and other personal property claimed under the mortgages constitutes lumber supplied to make up into finished product, and such finished product and personal property for sale in the ordinary course of business.

"(25) There was no effort made to keep the lumber and material up to a certain figure to correspond with the original amount as a part of the plant for the protection of the mortgage indebtedness; but the same were continually changing by being worked up into finished product, sold in the ordinary course of business, and new lumber and mill stock purchased for future orders, and the amount of lumber and mill stock on hand from time to time were solely regulated by the necessities of the business from time to time, the demand for finished product, and the ability to purchase lumber as funds permitted.

"(26) A large part of the lumber, finished product, and personal property sold, the proceeds of which from said sale amounting to $7,900 are now for distribution, were purchased from time to time and made up into finished product since the date of the mortgages."

It is certain that no other statute than the act of 1905, except perhaps a few statutes of limited range passed before the adoption of the present Constitution, has authorized a Pennsylvania corporation to mortgage its personal property, if that phrase be taken in its ordinary meaning, which does not include fixtures and movables of that class. The public policy of the state, witnessed by a host of decisions, has always been opposed to chattel mortgages, and (subject to some exceptions) has always required possession to be transferred before a sale or pledge of personal property becomes valid against other creditors of the vendor or pledgor. A court, therefore, may properly demand to be clearly satisfied that this long and firmly established policy has been abandoned, and should not be content with statutory language that is susceptible of more than one construction.

I do not agree that the act of 1905 shows clearly that so radical a change of policy was intended, and I shall state my reasons briefly. The act is a supplement to the act of 1901 (P. L. 1), whose purpose was "to provide for increasing the capital stock and indebtedness of corporations." This statute is devoted throughout to the subject stated in the title—the power to increase, and the method of exercising the power—and pays no attention to the manner of securing the corporate indebtedness. Neither "mortgage" nor "property" is mentioned or alluded to from beginning to end. The first section authorizes any corporation created by general or special law to increase its capital stock and indebtedness to such an amount as it may deem necessary to carry on and enlarge its corporate business and purposes. The second section deals with the method of increase, requiring a resolution of the board of directors, and afterwards the consent of the stockholders ascertained at a carefully regulated election. The third section requires the corporation to certify such consent to the Secretary of the Commonwealth, and to certify also the actual increase whenever it shall be made. The fourth section provides that this method need not be resorted to "in the case of indebtedness con-

tracted in the usual course of corporation business," and adds certain provisions that are not now relevant. It is clear that the method of securing corporate indebtedness was not in the mind of the Legislature. It is nowhere referred to, for the purpose of the act was simply to provide that stock and indebtedness might be increased to an unlimited amount, and to require that corporate action to this end should be taken by a prescribed method.

The act of 1905 is a supplement to the first section, and I quote the latter act in full:

"Section 1. Be it enacted &c., That the first section of the act, entitled 'An act to provide for increasing the capital stock and indebtedness of corporations,' approved the ninth day of February, Anno Domini one thousand nine hundred and one, which reads as follows:

" 'Section 1. Be it enacted, * * * that the capital stock or indebtedness, or both, of any corporation created by general or special law may, with the consent of the persons or bodies corporate holding the largest amount in value of its stock, be increased to such an amount in the aggregate of each as it shall deem necessary to accomplish and carry on and enlarge the business and purposes of the corporation. Such increase of either may be made at once or from time to time, as the stockholders aforesaid shall determine,' he and the same is hereby amended so as to read as follows:

"Section 1. Be it enacted, * * * that the capital stock or indebtedness, or both, of any corporation created by general or special law may, with the consent of the persons or bodies corporate holding the larger amount in value of its stock, be increased to such an amount in the aggregate of each, *without regard to the amount of the other, and regardless of any limitation upon the amount of either, prescribed in any general or special law regulating any such corporation,* as it shall deem necessary to accomplish and carry on and enlarge the business and purposes of such corporation. Such increase of either may be made at once or from time to time, as the majority in interest of the stockholders shall determine, as aforesaid: *and upon the authorizing of any such increase of indebtedness by the stockholders of such corporation, in the manner hereinafter provided, it shall be lawful for such corporation to secure the payment of the principal or interest, or both, of all or any part of such indebtedness, by mortgage, deed of trust, or other pledge or conveyance, by way of security, of all or any part of its real and personal property, rights, privileges, and franchises, and in such manner and upon such terms as its board of directors may determine.*"

The second of these italicized passages is supposed to overturn the settled policy of the state during more than a century, and to authorize any corporation having capital stock to make a chattel mortgage; the argument being that this has been accomplished by the mere insertion of the word "personal." I am unable to assent to this conclusion. It is manifest that the act has made no attempt to answer the grave questions that must suggest themselves at once to any ordinarily intelligent mind that undertakes to deal with so radical a change in the law of Pennsylvania. For example: How is constructive notice of the mortgage to be given? At present, chattel mortgages are not embraced within the recording acts, and therefore, even if such a mortgage should be actually spread upon the record, it would affect no one with notice unless he knew of it in fact. Have the recording acts been changed by implication so that the record of a chattel mortgage is now constructive notice to all the world? Is the mortgage good without change of possession, even if it be recorded? What is the effect of an unrecorded mortgage? Does a recorded mortgage give

a lien that follows the chattel into the hands of a purchaser for value? If so, how can a manufacturing or trading corporation transfer title to a buyer of its goods? And how can such a corporation carry on business after it has mortgaged its movables? Does the power extend only to chattels then owned, or does it cover after-acquired property also? Is after-acquired property to be a mere substitute for property that may have been sold, or is it to be an additional subject of the lien? These and many other questions would need to be considered and answered before such a subject could be properly treated by legislation. (I may suggest, also, in passing, that a constitutional question would be immediately presented to the courts: If the act does authorize chattel mortgages, the authority is given to certain corporations only—not to all corporations, and not to individuals. Does this make the act "special"? If so, it violates article 3, § 7, of the Pennsylvania Constitution, which forbids the General Assembly to pass a special law "authorizing the creation, extension or impairing of liens.")

It seems incredible that these and other perplexities, reasonably apparent as they are upon a few moments' reflection, should not have been seen by the Legislature, or should have been deliberately turned over to the courts for such solution as might be possible. Especially does this seem incredible, when a construction is apparent, as it seems to me, that gives effect to all the words of the act, and does no violence to existing and long-established policy. It will be observed that the corporation is authorized to secure its indebtedness, not merely by a mortgage lien, but by various forms of security—"mortgage, deed of trust, or other pledge or conveyance by way of security"—and it is authorized to employ these forms in dealing with the various kinds of property in its ownership—"real and personal property, rights, privileges, and franchises." Moreover, these securities may be employed "in such manner and upon such terms as the board of directors may determine." Is it not reasonable to believe that this whole passage was intended as a general statement, to the effect that the corporation might use its property to secure its indebtedness and might use it by employing whatever forms of security might be appropriate to the several kinds of property according to the law of the state? The spirit of the rule of construction, reddendo singula singulis, seems to offer a sufficient solution of the difficulty. In effect, the Legislature seems to say:

"Secure your indebtedness as you choose, using the method that is appropriate for the particular kind of property. Some kinds may be mortgaged, some may be pledged, some may be otherwise conveyed. No restriction is put upon you except the established rules that have been already laid down by other statutes, or by the courts."

At all events, this is the construction that appeals to my judgment; and, in the absence of a binding decision by the Supreme Court of the state, I adopt it as correct.

It follows that the referee was right in refusing to award the balance of the fund to the trustee under the mortgages. It belongs to the general creditors.

His order is therefore affirmed.